UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                 :

MICHAEL BARRETT,                           :

                                :

                       Plaintiff,        :      06 CIV 1970 (SCR)(MDF)

                                :

   -against-                     :      **REPORT AND**

                                :      **RECOMMENDATION**

BLACK & DECKER (U.S.) INC.,           :

                                :

                       Defendant.     :
------------------------------------------------------------------------X
TO: THE HONORABLE STEPHEN C. ROBINSON, U.S.D.J.

      Plaintiff, Michael Barrett, brings this action against Black & Decker (U.S.) Inc. ("Black

& Decker" or "Defendant") sounding in negligence, strict products liability and breach of

warranty.  Plaintiff alleges that he suffered injury to his right thumb when the misalignment of

the fence on a table saw manufactured by Black & Decker, the DeWalt DW744, caused a wood

shingle he was cutting to jam and kick back, thereby causing his thumb to come into contact with

the blade of the saw.

      This action was originally filed in January, 2006, in New York State Supreme Court,

County of Westchester.  In March, 2006, Black & Decker filed notice of removal in this Court

pursuant to 28 U.S.C. § 1332.  Not. of Removal ¶¶ 6, 10.  Now before me is Defendant's motion

to exclude Plaintiff's expert and for summary judgment.  For the following reasons, I recommend

that Defendant's motion be granted in its entirety.

# BACKGROUND[1]

## The Incident

On June 9, 2003, Plaintiff was injured while operating a Dewalt table saw, model number DW744, in connection with his employment as a carpenter for JF Brick, a construction contractor in Yonkers, New York. Def.'s St. ¶¶ 1-2. The table saw he was using was manufactured by Black & Decker. *Id.* ¶ 3.

Prior to his accident, Plaintiff had ten years of experience working as a carpenter with power tools that included table saws, chop saws, skill saws and jig saws. *Id.* ¶ 4. In his experience as a carpenter, Plaintiff used about twenty to thirty table saws. He used the table saw at issue in this case frequently for five to six months prior to the accident, without difficulty. Plaintiff also had no difficulty understanding the instruction manual included with the saw and the warnings contained therein. *Id.* ¶¶ 5-6.

On the day of the accident, Plaintiff cut ten to twenty cedar shingles. He used the table saw to cut 12 x 9 ½ inch flat cedar shingles (cutting the width of the shingles from 9 ½ inches to 9 inches) that were to be placed inside vinyl siding and nailed to the exterior of a house. *Id.* ¶¶ 7-8. To cut the shingles, Plaintiff measured the fence to 9 inches, placed the shingles on the right edge of the fence of the table saw, locked the fence down, turned the machine on, and slid the shingles through with his hand to cut half inch off. *Id.* ¶ 9. Plaintiff claims that the saw malfunctioned when the guide/fence did not properly align one of the shingles, and when it moved while he was using the saw. *Id.* ¶ 11. Plaintiff was not using a push piece (a piece used

---

[1] The following facts are drawn from the parties' Local Rule 56.1 Statements ("Def.'s St." and "Pl.'s St.") and are undisputed unless otherwise noted.

in lieu of the hand to push material past the blade, *see* Pl.'s Ex. C at 29-32) at the time of the accident. *Id.* ¶ 12.

**Plaintiff's Expert**

Plaintiff proffers the opinion of his proposed expert, Craig D. Clauser, in support of his claims. *Id.* ¶ 15. Mr. Clauser has written warnings for machinery such as machine shop tools, large steel mill equipment and devices used in chemistry labs. Pl.'s Ex. A at 58. However, he has never designed or participated in the design or manufacture of any product similar to the subject table saw. Def.'s St. ¶ 16. He also has not authored any writings that address a product like the table saw at issue. *Id.* ¶ 20.

Mr. Clauser met with Plaintiff once in November, 2003, for less than an hour. *Id.* ¶ 21; Def.'s Ex. J at 42-43. At Mr. Clauser's initial deposition in this case, on May 14, 2007,[2] he testified that he was able to formulate his conclusions without a detailed study of Plaintiff's injury, Def.'s St. ¶ 23 (citing Def.'s Ex. J at 47-48); Pl.'s Ex. A at 35, and that he did not use Plaintiff's deposition transcript to formulate his opinions. Def.'s St. ¶ 24; Def.'s Ex. J at 48-49. At that time, he stated that he wanted to review Plaintiff's deposition in more detail, in part to inform his opinion on when the saw's fence misaligned in relation to when Plaintiff became injured. Def.'s St. ¶ 25; Def.'s Ex. J at 72-73. However, at his second deposition, on July 17, 2007, he testified that he had done nothing further to review Plaintiff's testimony, which, again, did not formulate the basis for any of the opinions he expressed. Def.'s St. ¶ 26; Def.'s Ex. K at 6.

_____

[2] At this time, which was approximately four years after Mr. Clauser's meeting with Plaintiff and his first inspection of the saw, Mr. Clauser had not conducted any tests on the saw. Def.'s St. ¶ 42; Def.'s Ex. J at 53.

As to the cause of Plaintiff's accident, Mr. Clauser opined that the shingle Plaintiff was cutting jumped and kicked back because the fence was not parallel to the blade on the table saw – that is, that the "fence was not straight at the time [Plaintiff] began the cut."[3]  Def.'s St. ¶¶ 27, 29; Def.'s Exs. I, J at 54-55.  Plaintiff testified at his deposition, though, that a kickback, as he understands, would happen with heavier material, and that "in this case a shingle being such a light piece of material, would have no reason in the world to kick back."  Def.'s Ex. C at 62-63.  Plaintiff further testified that it was his perception that "the guide [i.e. the fence that Plaintiff had adjusted on the saw] hopped which caused the shingle to jam, which in turn caused the blade to pull [the shingle] through which flipped [his] hand," causing that hand to be exposed to the blade.  Pl.'s Ex. D at 64, 98.  In contrast, Mr. Clauser testified that the fence did not move during the cut that Plaintiff made.  Def.'s St. ¶ 33; Def.'s Ex. K at 34.

With respect to the design of the saw, Mr. Clauser testified that "the design, the way it exists, and including without a warning is defective.  Now, there may well be ways to change the design so that it wasn't so easy to misalign in which case you wouldn't need a warning, but I'm not in a position to say that right now."  Def.'s Ex. K at 29.  He testified that he did not have an opinion, as an engineer, regarding whether the saw could be designed in a different way to eliminate the hazard he perceived.  *Id.* at 31.  He also did not suggest, at his second deposition, any alternative design for the saw that would provide the same utility (with respect to the saw's capacity to be locked in front and back and to provide a finer measurement).  Def.'s Ex. K at 79-80.

_____

[3] In contrast, Plaintiff testified that he had adjusted the fence so that it was in a straight line and locked before he began the cut.  Def.'s Ex. C at 65-66.

In his June 30, 2007 report, Mr. Clauser stated that Plaintiff was using the saw without the guard in place, and that while this is not a recommended practice, it is not uncommon for numerous reasons. Def.'s St. ¶ 39; Def.'s Ex. I. Indeed, Black & Decker provides wrenches with the saw that can be used to remove the guard and to loosen or tighten the nut that attaches the saw blade. Pl.'s Ex. C at 102-03. Mr. Clauser testified, though, that the type of cut Plaintiff was making when he was injured was not the type of cut that required removal of the guard. Def.'s St. ¶ 40; Def.'s Ex. J at 70. He opined that if Plaintiff had used the guard at the time he was making his cut, the accident would not have occurred. Def.'s St. ¶ 41; Def.'s Exs. J at 71, K at 34.

Mr. Clauser conducted an examination of the subject table saw which involved the application of force with the fence unlocked[4] to "displace a pinion gear to disengage its mesh with the corresponding rack such that the rack could move freely past the stationary pinion." Def.'s St. ¶¶ 45-46; Def.'s Exs. I, K at 52-53. Mr. Clauser performed the test with the fence off and unlocked and had to push the rack up and pull down the pinion on the saw to create any misalignment. Def.'s St. ¶ 48; Def.'s Ex. K at 52-53. He also performed a test on a "cantilevered mounted fence of a 10" Delta table saw," which, as he stated, demonstrated that it requires more force (40 pounds) to misalign the fence on the Delta saw than on the rack and pinion system of the subject table saw (four pounds). Def.'s St. ¶ 50; Def.'s Ex. I.

With respect to warnings, Mr. Clauser opined that the subject saw lacked warnings on the

_____

[4] In contrast, Plaintiff testified that the fence was on and in the locked position at the time he began his cut. Def.'s St. ¶ 47; Def.'s Ex. C at 61.

saw to advise the user of the misaligned fence hazard.[5]  Although he concluded that "[h]ad the

warnings been present and had Mr. Barrett heeded them, he would not have been injured,"

Def.'s St. ¶ 53; Def.'s Ex. I, he also testified that he has no basis to believe that Plaintiff would

have heeded any such warning.  Def.'s St. ¶ 54; Def.'s Ex. K at 74.  Mr. Clauser does not dispute

that: (1) there is a warning on the subject saw that tells the user to read the owner's manual; (2)

there is a warning on the saw to use the guard for every operation that it can be used for; and (3)

there is an instruction in the owner's manual that warns the user to keep the blade parallel to the

fence.  Def.'s St. ¶ 55; Def.'s Ex. K at 72-74.  Mr. Clauser testified, moreover, that both the

owner's manual and the saw itself contain instructions on how to align the fence, Def.'s ¶ 57;

Def.'s Exs. F, J at 81-83, and that the warnings on the saw do not violate any safety standard

known to him.  Def.'s St. ¶ 61; Def.'s Ex. J at 80-81.  Notably, Mr. Clauser opined that had

Plaintiff heeded the existing warnings on the saw and the instructions in the owner's manual, the

accident would not have happened.  Def.'s St. ¶ 55; Def.'s Ex. K at 72-74.

## DISCUSSION

### Summary Judgment Standard

A party is entitled to summary judgment when "there is no genuine issue as to any

material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the

evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd.*

---

[5] While Mr. Clauser testified that certain table saws made by other manufacturers allow
for adjustments to return the fence to parallel position if misaligned, he does not dispute that
those saws do not contain any warning on the saw regarding the fence remaining parallel to the
blade.  Def.'s Ex. K at 57.

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On a motion for summary judgment, the moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). Moreover, only disputes "over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

**Expert Testimony**

Expert testimony is evaluated under Federal Rule of Evidence 702, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The Supreme Court has held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). This gatekeeping function applies to scientific expert testimony as well as technical and other specialized knowledge such as engineering. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999).

The court's inquiry under *Daubert* focuses not on the substance of the expert's

conclusions, but on the principles and methodology used to generate the conclusions. *Daubert*, 509 U.S. at 595. To assist with this inquiry, the court may consider the following factors laid out in *Daubert*: (1) whether the expert's technique or theory can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether it has a high known or potential rate of error; and (4) whether it is generally accepted in the relevant scientific community. *Kumho*, 526 U.S. at 149-50 (citing *Daubert*, 509 U.S. at 592-94). This list "neither necessarily nor exclusively applies to all experts or in every case." *Id.* at 141. Indeed, the trial court has "the same kind of latitude in deciding *how* to test an expert's reliability . . . as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Id.* at 152 (emphasis in original).

Under this framework, courts first examine whether the proposed witness qualifies as an expert – that is, whether the proposed witness has specialized knowledge, skill, experience, training or education that would assist the trier of fact in understanding the evidence or deciding on particular issues in the case. *Aspex Eyewear, Inc. v. Altair Eyewear, Inc.*, 485 F. Supp. 2d 310, 318 (S.D.N.Y. 2007) (citing *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 352 (S.D.N.Y. 2003)); *see also Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 164 F.3d 736, 746 (2d Cir. 1998).

Second, the court must examine the relevance and reliability of the proposed expert testimony. With respect to reliability, "[t]he district court should consider the indicia of reliability identified in Rule 702, namely, (1) that the testimony is grounded on sufficient facts or data; (2) that the testimony is the product of reliable principles and methods; and (3) that the witness has applied the principles and methods reliably to the facts of the case." *Aspex*, 483 F.

Supp. 2d at 319 (citations and internal quotations omitted).

**Plaintiff's Proposed Expert**

Here, Black & Decker seeks to exclude Mr. Clauser from testifying by arguing that: (1) he lacks the requisite skill, experience, training and education; (2) his opinions are without factual foundation and contradict Plaintiff's testimony; and (3) his testimony is unreliable and speculative. *See* Def.'s Mem. of Law in Supp. of Mot. to Exclude Pl.'s Expert and for Summ. J., Nov. 28, 2007 ("Def.'s Moving Br.").

### 1. Mr. Clauser's Qualifications

Defendant contends that Mr. Clauser's engineering training and experience is not relevant to the design, manufacture and warnings issues related to the table saw at issue in this case. In support of this contention, Defendant relies on *Pineda v. Ford Motor Company*, No. 04 Civ. 3359, 2006 WL 3337488 (E.D. Pa. Nov. 15, 2006), a products liability case in which the plaintiff, a Ford mechanic, was injured when the glass broke on the rear liftgate of a vehicle made by Ford Motor Company. There, the same Craig D. Clauser opined that the incident at issue occurred "because the liftgate glass design was defective in that it was only marginally able to resist fracture in its intended service and the pertinent manual and bulletins lacked adequate instructions and warnings." *Id.* at *1. The district court precluded Mr. Clauser from testifying as to the purported defects in the manual at issue, finding not only that he lacked the requisite professional qualifications but also that his methodology was unreliable. *Id.* at *4-5.

Notably, the district court in *Pineda* has since been reversed by the Third Circuit, which found that despite Mr. Clauser's own statement at the *Daubert* hearing that he did not offer himself as a warnings expert, his formal qualifications were "unassailable," and, that his

expertise was more than sufficient to satisfy Rule 702's liberal qualification requirement. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 245 (3d Cir. 2008). The circuit also held that the district court's inquiry in connection with the reliability of Mr. Clauser's methodology did not demonstrate the appropriate flexibility required by Rule 702. The circuit noted, in particular, that Mr. Clauser "did not have to develop or test alternative warnings to render an opinion that the [service manual at issue] did not provide adequate, step-by-step instructions . . . ." *Id.* at 248.

Here, Plaintiff contends that Mr. Clauser is qualified to offer his opinion on the subject table saw based on his experience writing warnings for non-commercial products such as machine shop tools, large steel mill equipment and chemistry lab devices. Pl.'s Mem. of Law in Opp. to Def.'s Mot. to Exclude Pl.'s Expert and for Summ. J., Jan. 22, 2008 ("Pl.'s Opp. Br.") at 7 (citing Pl.'s Ex. A at 58). Plaintiff also points to Mr. Clauser's licensing as a professional engineer, and his employment history in quality control, inspecting and testing, quality assurance, process development and control, customer technical service and claims, equipment design and safety and personal safety training, analysis of components and system failures, and consulting in safety and machine guarding. *Id.* at 8; Def.'s Ex. H.

Based on Mr. Clauser's education and professional experience, I find that he is sufficiently qualified to render an expert opinion regarding the subject table saw and the hazard associated with the alleged misalignment of the saw's fence. While Mr. Clauser has no specific experience with the table saw, he has significant engineering experience that includes working with safety and machine guarding, equipment design, material failure analysis and industrial accident investigation. That his experience appears to center on industrial machinery and not commercial table saws goes to the weight of his testimony, not its admissibility. *See*, *e.g.*,

*Humphrey v. Diamant Boart, Inc.*, No. 06 Civ. 2771, 2008 WL 413801, at *8 (E.D.N.Y. Feb. 13, 2008) (expert's "generalized engineering education and experience, combined with his specific work on machine guarding in several instances, qualifies him to testify with regard to guarding on power saws, despite his failure to have any particular expertise in saws") (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995)); *Mahoney v. JJ Weiser and Co., Inc.*, No. 04 Civ. 2592, 2007 WL 3143710, at *7 (S.D.N.Y. Oct. 25, 2007) ("Defendants' contention that [plaintiffs' proposed expert] does not have experience with the precise type of insurance policy in issue here goes to the weight of [his] testimony, not its admissibility.")

### 2.     Factual Foundation and Methodology

"When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). The Second Circuit has instructed that "expert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison . . . ." *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citations and internal quotations omitted). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Here, Defendant argues that Mr. Clauser's opinions should be excluded because they are

without factual foundation and inconsistent with Plaintiff's own deposition testimony. *See* Def.'s Moving Br. at 8-10. Defendant also submits that Mr. Clauser should be rejected as an expert because his conclusions have not been properly tested and he has not offered any alternative design. *See id.* at 11-15.

As to the cause of Plaintiff's accident, Mr. Clauser opined that the shingle Plaintiff was cutting jumped and kicked back because the fence was not parallel to the blade on the table saw – that is, that the "fence was not straight at the time [Plaintiff] began the cut." Def.'s St. ¶¶ 27, 29; Def.'s Exs. I, J at 54-55. Plaintiff testified, though, that he had adjusted the fence so that it was in a straight line and locked before he began the cut.[6] Def.'s Ex. C at 65-66. He further stated that a kickback, as he understands, would happen with heavier material, and that "in this case a shingle being such a light piece of material, would have no reason in the world to kick back." Def.'s Ex. C at 62-63. Plaintiff also testified that it was his perception that "the guide [i.e. the fence that Plaintiff had adjusted on the saw] hopped which caused the shingle to jam, which in turn caused the blade to pull [the shingle] through which flipped [his] hand," causing that hand to be exposed to the blade. Pl.'s Ex. D at 64, 98. In contrast, Mr. Clauser testified that the fence did not move during the cut Plaintiff made. Def.'s Ex. K at 34.

By contradicting Plaintiff's testimony about how the accident occurred, Mr. Clauser is seeking to provide his own version of an accident he did not witness. This is an *ipse dixit* in light of Plaintiff's contradictory deposition testimony, *see Barban v. Rheem Textile Sys., Inc.*, No. 01

---

[6] In an apparent attempt to square Plaintiff's version of the facts with that of Mr. Clauser, Plaintiff avers that while he testified that the fence was straight at the time of the accident, he was "not aware that the fence was misaligned until his meeting with Clauser, when Clauser was able to show [him] the misalignment." Pl.'s St. ¶ 30. Mr. Clauser, however, was not present during Plaintiff's accident, and cannot replace Plaintiff's version of the facts in this case with his own.

Civ. 8475, 2005 WL 387660, at *5 (E.D.N.Y. Feb. 11, 2005), which, in any event, Mr. Clauser concedes did not form the basis for any of the opinions he expressed in this case. Def.'s St. ¶ 26; Def.'s Ex. K at 6 & J at 49. As such, the undisputed factual disconnect between Mr. Clauser's and Plaintiff's versions of the accident at issue is reason enough to preclude Mr. Clauser's expert testimony. *Id.* (citing *Levine v. Sears Roebuck and Co.*, 200 F. Supp. 2d 180, 189 (E.D.N.Y. 2002)); *see also Davidov v. Louisville Ladder Group, LLC*, No. 02 Civ. 6652, 2005 WL 486734, at *2 (S.D.N.Y. Mar. 1, 2005) ("[A]n expert's opinion which is not based on the evidence in the case is little more than speculation and it cannot be the basis of a verdict in conflict with the uncontradicted evidence."), *aff'd by summary order*, 169 Fed. Appx. 661 (2d Cir. Mar. 10, 2006).

Another problem for Plaintiff is that the testing Mr. Clauser conducted on the subject saw took place with the fence off, Def.'s Ex. K at 50-52, contrary to Mr. Clauser's understanding – and Plaintiff's testimony – that Plaintiff had locked the fence on before he began the cut that led to the accident. Def.'s Exs. C at 61, J at 54-55. Such an "apples and oranges comparison" is unhelpful to the fact-finder. *Boucher*, 73 F.3d at 21.

It should also be noted that Mr. Clauser has failed to demonstrate a feasible and safe alternative design for the subject table saw. Despite Plaintiff's assertion that he is not required to prove evidence of alternative machine designs, *see* Pl.'s Opp. Br. at 19, the Second Circuit case which he cites for that proposition specifically provides that "it is true that the plaintiff carries the burden of showing that an alternative design was feasible and safer," in connection with a claim for design defect. *Urena v. Biro Manu. Co.*, 114 F.3d 359, 365 (2d Cir. 1997). The court in *Urena* held not that the plaintiff was not required to meet this burden, but that the plaintiff was

able to meet the burden without considering the testimony of his proposed expert. *Id.* Here, Plaintiff offers no evidence to meet this burden other than the testimony of Mr. Clauser, who was unable to suggest a feasible alternative design for the subject saw. *See* Def.'s Ex. K at 79-80.

For these reasons, I recommend that the Court preclude Mr. Clauser's testimony.

### *Prima Facie* **Showing**

Defendant contends that without Mr. Clauser's testimony, the amended complaint should be dismissed because Plaintiff would be unable to establish a *prima facie* case under the theories espoused therein.[7] *See, e.g., Giordano v. General Motors Corp.*, No. 91 Civ. 5451, 1996 WL 185678, at *2 (S.D.N.Y. Apr. 17, 1996); *see also Turrentine v. Bell Canada*, 173 F.3d 846 (2d Cir. 1999) (unpublished). Indeed, Plaintiff's opposition papers make clear that Mr. Clauser's proposed testimony is central to Plaintiff's case.

In support of his failure to warn claim, which is based on Plaintiff's allegation that there was no way for him to have anticipated the misalignment which he claims caused the accident, Plaintiff states, "[i]t is Clauser's expert opinion, based on a reasonable degree of engineering certainty, that the misalignment of the fence was difficult to detect." Pl.'s Opp. Br. at 15. On the remaining claims, Plaintiff cites Mr. Clauser's testimony that the design of the subject saw does not allow for proper alignment with the saw blade, that the subject saw violated American National Standard Institute (ANSI) standards, and that the saw should have contained a warning

---

[7] Plaintiff's failure to respond to this contention enables the Court to conclude that he has abandoned this issue, which, in this case, provides an independent basis for dismissal of this action. *See Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002); *Singleton v. City of Newburgh*, 1 F. Supp. 2d 306, 312 (S.D.N.Y. 1998); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997) ("[T]he failure to provide argument on a point at issue constitutes abandonment of the issue."), *aff'd*, 130 F.3d 1101 (2d Cir. 1997).

alerting the user of the danger of the fence becoming easily misaligned. *See id.* at 17-24.

Plaintiff also relies solely on Mr. Clauser's opinion to prove causation. *Id.* at 20 ("Clauser

demonstrated that the misalignment of the fence caused the wood to jam and kick back, which

resulted in [Plaintiff's] finger coming into contact with the saw blade.").

Without Mr. Clauser's testimony, Plaintiff fails to show how the subject table saw was

defective, or that some defect caused Plaintiff's injury – it follows, therefore, that Plaintiff cannot

assert a claim that requires such a showing. *See*, *e.g.*, *Macaluso v. Herman Miller, Inc.*, No. 01

Civ. 11496, 2005 WL 563169, at *8 (S.D.N.Y. Mar. 10, 2005) (citing cases); *see also Tardella v.

RJR Nabisco, Inc.*, 576 N.Y.S.2d 965, 966 (3d Dep't 1991) ("[W]hether the action is pleaded in

strict products liability, breach of warranty or negligence, it is a consumer's burden to show that

a defect in the product was a substantial factor in causing the injury . . . .").[8] To the extent any of

Plaintiff's claims do not require such a showing, I find that Defendant is nevertheless entitled to

summary judgment, even assuming, *arguendo*, that Mr. Clauser's testimony could be credited.

### 1. Failure to Warn

A plaintiff asserting a failure to warn claim must establish: (1) the manufacturer has a

duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should

have known; and (3) that failure to do so was the proximate cause of the harm. *Barban*, 2005

_____

[8] While some courts have found expert testimony unnecessary in the products liability
context – at least with respect to the causation element of a design defect claim, *see*, *e.g.*, *Clarke
v. LR Sys.*, 219 F. Supp. 2d 323, 331 (E.D.N.Y. 2002) (citing *Jarvis v. Ford Motor Co.*, 283 F.3d
33, 47 (2d Cir. 2002); *Faryniarz v. Nike, Inc.*, No. 00 Civ. 2623, 2002 WL 530997, at *2
(S.D.N.Y. Apr. 8, 2002)) – where, as here, no witness can establish causation (including
Plaintiff, who was "not aware that the fence was misaligned until his meeting with Clauser," Pl.'s
St. ¶ 30), expert testimony is necessary to show how a defect in the subject table saw caused
Plaintiff's injury. *Cf. Faryniarz*, 2002 WL 530997, at *2.

WL 387660, at *9.  As both parties acknowledge, New York recognizes two circumstances in which a manufacturer has no duty to warn of known or foreseeable dangers, namely, where the dangers are obvious and where the user is fully aware of those dangers.  *Id.* (citations omitted).  I find that both circumstances apply here.

First, there is no question that the possibility that serious injury could result from contact with a saw's blade is obvious, particularly to an experienced carpenter.  *See*, *e.g.*, *Hutton v. Globe Hoist Co.*, 158 F. Supp. 2d 371, 376-77 (S.D.N.Y. 2001).  In fact, Plaintiff does not dispute the obviousness of the danger of being cut by a saw's blade, or that he is a carpenter by trade.  Rather, he claims that there was no way for him to have been aware of or to have anticipated the misalignment that caused the accident.  Pl.'s Opp. Br. at 14-15.

While it is true that a plaintiff must have actual knowledge of the specific hazard for the knowledgeable user exception to apply, *see Donald v. Shinn Fu Co. of America*, No. 99 Civ. 6397, 2002 WL 32068351, at *9 (E.D.N.Y. Sept. 4, 2002) (citations omitted), Plaintiff's deposition testimony demonstrates that he was aware of the particular danger at issue here. Plaintiff testified to have read and understood the warning on the first page of the instruction manual that came with the subject table saw, which cautions users to utilize the blade guard on every operation for which it can be used to avoid injury, and refers to the instruction in the manual on how to avoid serious injury by adjusting the fence if it is not parallel to the blade.[9] Def.'s Exs. C at 33-35, F.

---

[9] To the extent Plaintiff contends that this particular warning did not apply to the misalignment as it occurred in this case (or that the danger imposed by such a misalignment would not be obvious even to an experienced carpenter), this contention is belied by Mr. Clauser's testimony that had Plaintiff heeded the existing warnings and instructions on the saw and in the owner's manual, the accident would not have happened.  Def.'s Ex. K at 72-74.

Thus, I find that Plaintiff's failure to warn claim should be dismissed.

## 2.        Design Defect

Generally, a plaintiff seeking to impose strict liability for a design defect must show that: (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing the plaintiff's injury. *See Ferracane v. United States*, No. 02 Civ. 1037, 2007 WL 316570, at *5 (E.D.N.Y. Jan. 30, 2007); *Colon v. Bic USA, Inc.*, 199 F. Supp. 2d 53, 86 (S.D.N.Y. 2001).

Here, Plaintiff's design defect claim relies on Mr. Clauser's opinion that the saw, as designed, should have included a warning about the potential misalignment of the fence. Pl.'s Opp. Br. at 17-18; Pl.'s Ex. A at 27-30. However, Plaintiff fails to offer evidence to demonstrate that it was feasible to design the saw in a safer manner (as explained above), or to show how the defective design of the saw was a substantial factor in causing Plaintiff's injury. Indeed, Mr. Clauser's own testimony supports the conclusion that had Plaintiff heeded the warning to use the guard – or, the warning on the saw to read the owner's manual and the instruction therein to keep the blade parallel to the fence – the accident would not have happened. Def.'s Exs. J at 70-71, K at 72-74.

Nevertheless, Plaintiff points to the fact that the guard meant to cover the blade of the subject saw was intentionally removable. *Id.* at 18. Plaintiff cites *Gould v. Rexon Industrial Corp., Ltd.*, No. 05 Civ. 374, 2006 WL 2301852, at *3 (N.D.N.Y. Aug. 8, 2006), for the proposition that "a jury could conclude that [Defendant] took an unreasonable risk in marketing the table saw without a permanently attached safety guard." As the *Gould* court recognized, however, not every product that is designed with a removable safety feature creates a question of

fact for the jury to decide. *Id.* (citing *David v. Makita U.S.A., Inc.*, 649 N.Y.S.2d 149, 151 (1st Dep't 1996) (failure to permanently attach blade guard is not a design defect where the plaintiff offers no expert testimony that the use of the removable blade guard rendered the saw not reasonably safe for its intended use); *Banks v. Makita U.S.A., Inc.*, 641 N.Y.S.2d 875, 877 (2d Dep't 1996) (no design defect where the use of the power saw would be "limited and rendered useless for many of its intended functions if a blade guard was permanently attached")).

The distinctions highlighted in *Gould* also apply here. Similarly missing from the expert testimony that Plaintiff relies on in this case is any indication that the removable blade guard rendered the saw not reasonably safe for its intended use. To the contrary, Mr. Clauser testified that the fact that the saw allowed for cuts that required removal of the guard did not bring the saw out of compliance with any safety standard known to him. Def.'s Ex. J at 71. And, Plaintiff himself testified that using the guard is impractical 90% of the time – in other words, that the saw would effectively be rendered useless if a blade guard was permanently attached. Def.'s Ex. C at 70.

Accordingly, I find that Plaintiff's design defect claim should be dismissed.

### 3. Manufacturing Defect

To plead a manufacturing defect under either negligence or strict liability, "the plaintiff must show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction, and that the defect was the cause of plaintiff's injury." *Colon*, 199 F. Supp. 2d at 85 (citation and internal quotations omitted).

Here, Plaintiff alleges in the amended complaint that the manufacture or assembly of the

saw was "inherently defective." Am. Compl. ¶¶ 54, 60. Plaintiff fails to plead which part of the saw was defective, or in what way some particular defect caused plaintiff's injury. Instead, Plaintiff claims that the fence on the subject saw was easily misaligned, as Mr. Clauser opined, because of some unidentified manufacturing defect. *See* Pl.'s Opp. Br. at 21-22. Plaintiff also does not address Defendant's evidence that the subject table saw met published safety standards when it was manufactured and sold. *See* Def.'s Ex. G.

Thus, I find Plaintiff's conclusory allegations and lack of proof insufficient to defeat Defendant's motion for summary judgment on this claim.

### 4. Negligence

The parties agree that New York courts generally consider strict products liability and negligence claims to be "functionally synonymous." *See Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (1995) (citations omitted). While the Second Circuit has characterized this aspect of New York products liability as unsettled because the New York Court of Appeals has yet to affirmatively hold that negligence and strict liability have merged, *see Jarvis v. Ford Motor Co.*, 283 F.3d 33, 63 (2d Cir. 2002), courts analyze both claims under a single test. *See*, *e.g.*, *Dalton v. Stedman Machine Co.*, No. 05 Civ. 452, 2008 WL 351676, at *6-7 (N.D.N.Y. Feb. 7, 2008); *Viscusi v. Proctor & Gamble*, No. 05 Civ. 01528, 2007 WL 2071546, at *12 (E.D.N.Y. July 16, 2007); *Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 164-65 (S.D.N.Y. 2003). Accordingly, I recommend that Plaintiff's negligence claim be dismissed for the reasons set forth above.

### 5. Breach of Warranty

Plaintiff contends that Defendant breached its express and implied warranties that the

table saw would be fit for its intended purpose. "To establish the breach of an express warranty, the plaintiff must show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase' and that the warranty was relied upon to the plaintiff's detriment." *Tyler v. Kawaguchi Inc.*, No. 00 Civ. 6366, 2006 WL 581184, at *5 (W.D.N.Y. Mar. 8, 2006) (quoting *Friedman v. Medtronic, Inc.*, 345 N.Y.S.2d 637, 643 (2d Dep't 1973)). The plaintiff must set forth the terms of the warranty upon which he relied. *See Davis v. New York City Housing Auth.*, 668 N.Y.S.2d 391, 393 (2d Dep't 1998) (dismissing express warranty claim for failure to set forth terms of warranty) (citing *Copeland v. Weyerhaeuser Co.*, 509 N.Y.S.2d 227 (4th Dep't 1986)); *see also Arnold v. Krause, Inc.*, 232 F.R.D. 58, 74 (W.D.N.Y. 2004); *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 845 (E.D.N.Y. 1995). Here, Plaintiff does not identify the terms of the purported warranty he claims to have relied on. Plaintiff's conclusory allegation that he relied on the "representation that the subject saw was safe," *see* Pl.'s Opp. Br. at 24, without citation to any documentary evidence of a particular affirmation or promise made by Defendant, is insufficient to create a material issue of fact. Accordingly, I recommend that Plaintiff's claim for breach of express warranty be dismissed.

To succeed on an implied warranty claim, Plaintiff must establish: "(1) that the product was defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident." *Plemmons v. Steelcase Inc.*, No. 04 Civ. 4023, 2007 WL 950137, at *3 (S.D.N.Y. Mar. 29, 2007) (citations and internal quotations omitted). Liability under strict products liability and implied warranty theory are essentially the same. *See Dalton*, 2008 WL 351676, at *7 (citing

*Denny*, 87 N.Y.2d at 258-59).  Here, Plaintiff has not alleged sufficient facts to distinguish his claim for breach of implied warranty from his claim alleging strict products liability based on defective design.[10]  Plaintiff's failure to distinguish these claims establishes that "the distinction between the defect concepts in tort law and in implied warranty theory is of no effect in the instant case." *Arnold*, 232 F.R.D. at 74 (citing *Denny*, 87 N.Y.2d at 262-63).  I find, therefore, that Plaintiff's claim for breach of implied warranty also fails for the reasons set forth above.

## CONCLUSION

Based on the foregoing, I respectfully recommend that Defendant's motion to exclude Plaintiff's expert and for summary judgment be granted in its entirety and this case be dismissed.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of thirteen (13) working days (*see* Fed. R. Civ. P. 6(a)), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Stephen C. Robinson, at the United States Courthouse, 300 Quarropas Street, Room 633, White Plains, New York, 10601, and to the chambers of the undersigned at Room 434, 300 Quarropas Street, White Plains, New York 10601.

---

[10] In support of his design defect claim, Plaintiff alleges that "[t]he product was by its design and/or construction and/or manufacture and/or assembly inherently defective."  Am. Compl. ¶¶ 54, 60.  In support of his breach of implied warranty claim, he alleges that the saw and its parts "were not of merchantable quality or fit for the purpose which it was intended," and that he was "unaware of said defects."  *Id.* ¶¶ 43-44.  The gravamen of these theories of liability is essentially the same.  *See Arnold*, 232 F.R.D. at 73-74.

Failure to file timely objections to the Report and Recommendation will preclude later

appellate review of any order to judgment that will be entered by Judge Robinson. *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 506 U.S.

1038 (1992); *Small v. Secretary of H.H.S.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); *Wesolek*

*v. Canadair, Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988). Requests for extensions of time to file

objections must be made to Judge Robinson and should not be made to the undersigned.

IT IS SO ORDERED.

Dated: August 5, 2008
White Plains, New York

Respectfully submitted,

MARK D. FOX
UNITED STATES MAGISTRATE JUDGE